UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:25-cv-21570-RKA

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

DR. AMEET VOHRA; VOHRA WOUND
PHYSICIANS MANAGEMENT, LLC;
AND VHS HOLDINGS, P.A.,

    Defendants.
_____/

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

## SUMMARY OF ARGUMENT

The Government's current attempt to defend the Complaint[1] as legally sufficient under the FCA makes plain why it is not: Despite conducting an over five-year investigation, the Government *still* cannot articulate with specificity what it believes the Defendants did wrong here. And so it goes that the Complaint fails even under normal pleading standards, much less under Rule 9(b)'s heightened standard for alleging fraud.

As an initial point, the Government neglects to meaningfully address Defendants' arguments and instead either ignores them wholesale, declines to respond, or feigns ignorance. The most glaring example is the Government's continuing refusal to even declare which fraud theories it intends to pursue. Defendants moved to dismiss a theory based on unperformed debridements merely out of an abundance of caution due to (seemingly) imprecise language in the Complaint but assumed, based on the dearth of facts alleged, the Government would clarify this was not their claim. Instead, the Government stubbornly doubles down, ignores the issue entirely, and, in doing so, has waived the right to assert this theory.

With respect to its theory that Vohra physicians billed for medically unnecessary surgical debridements, the Government baselessly says it is "not required to answer" Defendants' basic questions about what is being alleged. Opp. at 7–8. And, on the distinction between the two procedures at issue, the Government provides the uninformative "clarification" that a "surgical" debridement is "surgical" in nature. *Id.* at 3. Of course, the Government cannot apply this distinction to the six patient examples it has purposely chosen to highlight, so it instead argues that it has alleged detailed information about the patients themselves, while overlooking the fact that it

---

[1] This reply uses the capitalized terms as defined in Defendants' motion to dismiss, the term "Mot." to refer to the motion to dismiss (ECF No. 15), and the term "Opp." to refer to the Government's opposition (ECF No. 26).

1

has not explained *why* any of the patients' claims were false.  None of this is sufficient to allege that the claims for surgical debridements were fraudulent, or that Dr. Vohra or Vohra WPM knowingly caused the submission of fraudulent claims.

Similarly, none of the Government's remaining claims are adequately pled.  With respect to its Modifier 25 theory, the Government cannot articulate what standard it is using to determine whether an evaluation was "significant" enough or why the two patient examples do not meet that standard.  Even worse, the Government does not even try to address the problems with its tag-along claims for false records and unjust enrichment, which doom both claims.

At bottom, the Government's disinterest in remedying these key deficiencies begs the question of how and why the Government intends to continue to pursue this case.  Or whether it is simply looking to extract a quick settlement from Defendants using the threat of hundreds of millions of dollars in FCA treble damages and penalties, exclusion, and, now, the crippling effects of CMS's recent payment suspension.[2]  But Rule 9(b) exists to guard against this exact scenario.  *See United States ex rel. Clausen v. Lab'y Corp. of Am.*, 290 F.3d 1301, 1313 n.24 (11th Cir. 2002) (explaining that Rule 9(b) is intended to prevent plaintiffs from "bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, are baseless allegations used to extract settlements").  Because Defendants lack sufficient notice of any of the claims against them, the Complaint should be dismissed under Rules 12(b)(6) and 9(b).

---

[2] Four days after Defendants filed their motion to dismiss, CMS inexplicably chose only then to suspend all Medicare payments to Vohra.  And as set out in the applicable notice, this suspension was *solely* based on the Government's allegations in the Complaint.

## ARGUMENT

I. **The Government Fails to State a Presentment Claim Based on Allegedly Unperformed Procedures.**

Any claim based on allegedly unperformed debridement procedures should be dismissed at the outset because it is still unclear if the Government is asserting it as a basis for relief. Defendants explained in their motion that the Complaint does not identify a single fact in support of the theory that Vohra billed for surgical debridements when no procedure (of any type) was performed and certainly does not establish the who, what, where, when, and how of such a scheme. *See* Mot. at 15; *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1013–14 (11th Cir. 2005). In fact, the Government's repeated assertion that Dr. Vohra and Vohra WPM trained physicians to perform unnecessary procedures on all wounds establishes that *some* type of debridement was provided. *See* Mot. at 16 (citing Compl. ¶ 168); Opp. at 1 (arguing that physicians were provided with financial incentives "to perform *any* debridement procedure" (emphasis added)).

The Government could have easily clarified its position in its opposition but refused to do so. It has therefore abandoned its right to assert this theory. *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("[W]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." (quotations omitted)); *Carter v. BPCL Mgmt., LLC*, No. 19-60887-CIV, 2021 WL 7502562, at *1 (S.D. Fla. Sept. 22, 2021) ("Plaintiff's refusal to refute any arguments in Defendant's Motion operates as a waiver of those arguments and is akin to a failure to respond."). In fact, the Government only confuses things further by referencing "non-performed" surgical procedures without explaining whether this means that no procedure, or only a selective procedure, was performed. *See, e.g.*, Opp. at 1, 4, 6, 8. These are very different theories of fraud, and Defendants are not required to decipher for themselves on which theory the Government plans to proceed. *See Weiland v. Palm Beach Cnty.*

3

*Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015) (even under normal pleading standards, a complaint must "give the defendants adequate notice of the claims against them").

II. **The Government Fails to State a Presentation Claim Based on Medically Unnecessary Procedures.**

    A. **The Complaint Does Not Adequately Allege Falsity.**

The Complaint fails to explain when a surgical debridement is unnecessary or how the claims meet that standard. *See* Mot. at 6–12. The Government simply doubles down in its opposition by identifying supposed distinctions between "surgical" and "selective" debridements that either have no meaning whatsoever or are contradicted by its own allegations. Tellingly, the Government does not even try to apply these distinctions to the patient examples it has chosen (and apparently depends upon) and instead focuses on allegations that have no bearing on whether *actual* false claims were submitted.

        1. **The Government Has Not Articulated a Coherent Theory of Medical Necessity**

As an initial matter, the Government ignores Dr. Vohra and Vohra WPM's argument that its conflicting theories fail to put them on notice of what conduct was allegedly false. *See* Mot. at 7. Is the scheme one to perform "selective," not "surgical," debridements, but then upcode the claims? Or is it to perform "surgical" debridements when only "selective" would have sufficed? Without citing any authority, the Government simply responds that it is "not required" to answer these basic questions. *See* Opp. at 7–8. But any pleading standard, much less the heightened standard under Rule 9(b), requires that Defendants be on notice of the claims against them. *See, e.g.*, *Weiland*, 792 F.3d at 1323.[3] This response is particularly galling considering that the

---

[3] The Government misses the point on its add-on code theory. This is not about "hypothetical circumstances," Opp. at 8; it is about the Government not giving notice of the circumstances forming the basis of its claims.

4

Government spent more than five years investigating Dr. Vohra and Vohra WPM's conduct, and yet it still refuses to articulate what, if anything, they did wrong.

The Government likewise does nothing to clear up the confusion it created in the Complaint on the distinction between a "surgical" and "selective" debridement. *See* Mot. at 7-8. Indeed, the Government's description of a "surgical" debridement as being "surgical" is intentionally unhelpful. *See* Opp. at 3 (a "surgical" debridement is "surgical," whereas a "[s]elective debridement is not" and a "surgical" debridement involves "surgically cutting"). Both procedures are performed at a patient's bedside, not in operating rooms, so merely slapping a "surgical" label on it says nothing about the actual procedure used. Describing a "surgical" procedure as "more extensive," *see id.*, also does not move the needle. The Government would come closer to offering a workable distinction if its claim in its opposition that surgical debridements are only performed initially, *see* Opp. at 4, was not contradicted by its own allegations, Compl. ¶ 107 (acknowledging the possibility that subsequent surgical debridements may be necessary).[4] And passing citations to vague or unrelated statements in Medicare guidance or Vohra's documents, Opp. at 3, only heighten the confusion. *See, e.g.*, Compl. ¶ 108 (distinguishing between "deep and through skin, subcutaneous tissue, muscle fascia, and muscle" and more "superficial" procedures); Compl. ¶ 109 (discussing frequency of procedures only).

### 2. The Government Does Not Adequately Allege that False Claims Were Submitted for Any of the Six Patient Examples.

In its motion, Defendants methodically went through each of the six patient examples and established that the Government had not connected the dots between what conduct it believes occurred and how that constituted fraud. *See* Mot. at 8–12. Because there are no "indicia of

---

[4] It is likely for this reason that the Government now says only "extended" serial surgical debridements are unnecessary. *See* Opp. at 7. Nowhere does the Government even attempt to explain what this actually means.

5

reliability" to suggest that "actual false claim[s]" were made to the Government, falsity has not been sufficiently alleged. *See Clausen*, 290 F.3d at 1311.

Rather than address these deficiencies directly, however, the Government spends most of its opposition reciting allegations regarding the alleged scheme that have no bearing on whether false claims ultimately resulted. For example, the Government points to "aggressive corporate targets and quotas" used by Vohra WPM to increase the number of surgical procedures, *see* Opp. at 4–5, without tying these numbers to a single medical decision made by a single Vohra physician. Nor does "the difference in Medicare reimbursement rules" for the two procedures, *see id*. at 5, establish anything about how physicians chose which procedure was medically necessary for their own patients. At bottom, these allegations have nothing to do with actual claims and certainly do not establish the "indicia of reliability" that false claims were submitted. *See Clausen*, 290 F.3d at 1311; *see, e.g.*, *Barys ex rel. United States v. Vitas Healthcare Corp*., No. 04-21431, 2007 WL 2310862, at *5 (S.D. Fla. July 25, 2007).

Even worse, the Government tries to link the alleged scheme to surgical debridement claims by making self-serving, unsupported accusations about Vohra's EMR system. Because the EMR only permitted billing for surgical debridement, the argument goes, "[i]t didn't matter at all what a physician actually did" for any of the claims because the EMR always billed for a surgical debridement. *See* Opp. at 5. But the Government also admits (as it must) that the EMR always permitted physicians to override this feature, Compl. ¶ 125, and there is no reason to conclude that Vohra physicians did not routinely do so. *See Corsello*, 428 F.3d at 1013 ("Although we construe all facts in favor of the plaintiff when reviewing a motion to dismiss, we decline to make inferences about the submission of fraudulent claims because such an assumption would strip all meaning from Rule 9(b)'s requirements of specificity.").

6

With respect to the patient examples, the Government tries to sidestep its self-generated problem by arguing that the Complaint includes sufficient detail about the six patients such as their age, sex, dates of service, and wound details. *See* Opp. at 6.[5] The deficiency, however, is not that the patients themselves were not sufficiently identified, but rather that the Government has not explained why the claims were false. *See* Mot. at 10-12; *see, e.g.*, *Barys*, 2007 WL 2310862, at *4–5 (holding that the inclusion of details regarding the submission of claims did not excuse plaintiffs from identifying specific allegations demonstrating falsity). On this point, the opposition merely states that the "Complaint explains why the claims were false," Opp. at 6, and cites to paragraphs in the Complaint without addressing Defendants' points at all:

- <u>Medicare Beneficiaries 1 and 2</u>: The Government says only that the photos show that "no surgical procedure" took place without explaining how it possibly drew that conclusion. *See* Mot. at 10.

- <u>Medicare Beneficiaries 3 and 4</u>: The Government points to Medicare Beneficiary 3's "palliative status," but such an escalation in the patient's wound suggests that a surgical procedure was even *more* necessary. Moreover, the Government does not even allege that repeatedly removing "small amounts" of tissue using a surgical debridement is improper, much less indicative of a medically unnecessary procedure. *See* Mot. at 11.

- <u>Medicare Beneficiary 5</u>: The Government says only that the claim was based on a "made-up number," Opp. at 6, while ignoring the fact that this is not what the medical records

---

[5] Although the Government says it identified "at least 28 examples" of false claims for these patients, Opp. at 6, it is impossible to decipher how the Government reached this total. Most of the paragraphs cited do not address the number of claims at all. *See* Compl. ¶¶ 243, 248, 254, 261, 275. And, if you add the total number of claims identified for each patient in other paragraphs, it does not equal 28 claims. *See, e.g.*, Compl. ¶ 258 (discussing 28 surgical debridements for *only* Medicare Beneficiary 3). The difficulty likely stems from the Government's incoherent description of the time periods in which false claims were allegedly submitted for the six patients. This is another basis for dismissing the Complaint, Mot. at 10 n.6, which the Government also ignores.

7

show. *See* Mot. at 11. The physician logged the wound's surface area, not depth, and the Government offers no basis on which to infer that it is medically unnecessary to perform successive surgical debridements on such a large wound. *See* Mot. at 11–12.

- <u>Medicare Beneficiary 6</u>: The fact that a wound "achieved healing" status, Opp. at 6, does not mean that it will continue to heal with biofilm presence. Indeed, the Complaint states that the presence of biofilm makes healing *less* likely. Compl. ¶¶ 272, 277–78.

None of these allegations establish indicia of reliability that false claims were submitted. *See, e.g.*, *United States ex rel. Lewis v. Cmty. Health Sys., Inc.*, No. 18-20394-CIV, 2020 WL 3103994, at *15–17 (S.D. Fla. June 11, 2020) ("conclusory allegations of wrongdoing" and "facts [] left dangling, unconnected to the Relators' fraud allegations" are insufficient).[6]

### B. The Complaint Does Not Adequately Allege Causation.

The Complaint should be dismissed for the additional reason that Dr. Vohra or Vohra WPM did not cause physicians to submit false claims. Mot. at 12–13. Even if the Government had sufficiently pled that Vohra WPM and Dr. Vohra were involved in "all aspects of the alleged scheme," Opp. at 8–9, it has not adequately pled that this scheme affected physicians' decisions. This deficiency is particularly glaring considering the court's dismissal of the complaint in *United States v. Healogics, Inc.*, No. 14-cv-283, 2016 WL 10540886, at *4–6 (M.D. Fla. Dec. 13, 2016), which involved much more detailed facts on the company's campaign to increase the use of surgical debridements by physicians. The Government brazenly claims that the *Healogics* complaint involved "no details" at all, Opp. at 9, while ignoring the very detailed allegations cited by Defendants, including statements by a physician who admitted his decision-making was, in

---

[6] The Government half-heartedly attempts to distinguish three cases cited by Defendants on the basis that the allegations in those cases were more conclusory than the ones here. *See* Opp. at 7. But, again, the Government fails to appreciate that pleading details on the claims that were submitted does not render such claims false. The Complaint must plead *why* those claims were false, which it fails to do here.

fact, influenced. *Healogics*, 2016 WL 10540886, at *4. The Government also cites *Ruckh v Salus Rehabilitation, LLC*, 963 F.3d 1089, 1107 (11th Cir. 2020), but the relator there had evidence, including testimony from two nurses, that employees were pressured to upcode "irrespective of the services provided." Despite its over five-year investigation, the Government includes no such statements from Vohra physicians, or any other details to establish causation.

        **C.**     **The Complaint Does Not Adequately Allege Scienter.**

The Complaint is also deficient because it fails to allege scienter. *See* Mot. at 14. Although the Government cannot describe the distinction between a surgical and selective debridement itself, *see supra* Part II.A, it argues that what matters is that Dr. Vohra and Vohra WPM can. But the internal corporate documents cited by the Government, *see* Compl. ¶¶ 148–53, demonstrate just how amorphous any definitions are and certainly do not establish that Dr. Vohra or Vohra WPM had actual knowledge that physicians performed unnecessary procedures.

**III.**    **The Government Fails to State a Presentation Claim Based on Use of Modifier 25.**

The Government's presentation claim based on the use of Modifier 25 similarly fails. The Government admits, as it must, that appending Modifier 25 is appropriate when the evaluation was "significant and separately identifiable" and that the treating physicians evaluated separate wounds for both patients. Compl. ¶¶ 299, 303. The Government simply disagrees with providers' conclusions that their evaluations were "significant" enough. The Government responds that the claims were false because there were "no changes to [the] treatment plan," Opp. at 11, or such changes were "nonmaterial," Compl. ¶ 305. Again, though, the Government cites nothing imposing such a rule and fails to explain why discontinuing the use of ointment is a "nonmaterial" change. The closest the Government comes is citing an article discussing an entirely unrelated condition called Tinea Pedis, Compl. ¶ 286, which tells nothing about whether the evaluation of

9

the two patients (who did not have Tinea Pedis) was "significant" enough to warrant using Modifier 25. Nor has the Complaint sufficiently alleged knowledge or causation because there are no facts suggesting that Dr. Vohra or Vohra WPM knew that false claims were submitted as a result of the EMR's automated features or caused this to occur. *See* Mot. at 17.

### III. The Government Fails to Allege a False Records Claim.

A claim for making a false record under 31 U.S.C. § 3729(a)(1)(B) is *harder* to prove than a presentation claim because it also requires an additional showing: proof of a false statement that was "material" to the false claim. *See* Mot. at 18. Yet, the Government devotes only three sentences to this tag-along theory in its opposition. It says that the EMR was programmed to create "false and misleading medical records to pass audits and ensure that . . . [the] revenue stream . . . would continue to grow." Opp. at 14. The Government does not say which statements were "false and misleading," much less how those statements were material to actual claims (being material to audits or revenue is certainly not enough). *See, e.g.*, *Crocano*, 615 F. Supp. 3d at 1309 (false record must "play a meaningful role in causing payment of a specific claim"). Again, the Government's failure to even address Defendants' arguments means that it has abandoned this theory. *See Jones*, 564 F. App'x at 434.

### IV. The Government Fails to State an Unjust Enrichment Claim.

The Government fails to allege any of the unjust enrichment elements as to VHS Holdings. In fact, there are no allegations relating to the entity's participation in the fraudulent scheme at all. And the claim is similarly deficient with respect to Dr. Vohra and Vohra WPM for the same reasons that the presentation claims fail. *See supra* Parts I, II, III.

### **CONCLUSION**

Defendants respectfully request that the Court grant their motion to dismiss.

Dated: June 27, 2025

**MCDERMOTT WILL & EMERY LLP**

*/s/ Oliver Benton Curtis, III*
Oliver Benton Curtis, III (FBN 118156)
bcurtis@mwe.com
Leah Palmer (FBN 1050765)
lpalmer@mwe.com
333 SE 2nd Avenue
Suite 4500
Miami, Florida 33131-4336
Tel: (305) 358-3500
Fax: (305) 347-6500

Mara Theophila (*admitted pro hac vice*)
200 Clarendon Street
Floor 58
Boston, MA 02116
Telephone: (617) 535-4107
E-Mail: mtheophila@mwe.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 27, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Oliver Benton Curtis, III*
Oliver Benton Curtis, III